# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF IOWA
### EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff, vs. AGRIPROCESSORS, INC., SHOLOM RUBASHKIN, BRENT BEEBE, HOSAM AMARA and ZEEV LEVI, Defendants. | No. 08-CR-1324-LRR<br><br>**ORDER** |

## I. INTRODUCTION

The matter before the court is Defendant Agriprocessors, Inc.'s Motion to Suppress ("Motion") (docket no. 510).

## II. RELEVANT PRIOR PROCEEDINGS

### A. Seventh Superseding Indictment

The Seventh Superseding Indictment (docket no. 544) charges Defendant Agriprocessors, Inc. ("Agriprocessors") with 10 crimes in 164 counts.[1] Count 1 charges Agriprocessors with Conspiracy to Harbor Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(v)(I) and 1324(a)(1)(B)(i). Counts 2 through 70 charge Agriprocessors with Harboring Undocumented Aliens and Aiding and Abetting the Harboring of Undocumented Aliens for Profit, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii), 1324(a)(1)(A)(iv), 1324(a)(1)(A)(v)(ii), 1324(a)(1)(B)(i) and 18 U.S.C. § 2. Count 71 charges Agriprocessors with Conspiracy to Commit Document Fraud, in violation of 18 U.S.C. § 371. Count 72 charges Agriprocessors with Aiding and Abetting Document Fraud, in violation of in violation of 18 U.S.C. §§ 1546(a) and 2.

---

[1] None of the other defendants joined in the Motion, and thus the court omits all reference to them.

Counts 73 through 86 charge Agriprocessors with Bank Fraud, in violation of 18 U.S.C. § 1344. Counts 87 through 110 charge Agriprocessors with False Statements and Reports to a Bank, in violation of 18 U.S.C. § 1014. Counts 111 through 124 charge Agriprocessors with Wire Fraud, in violation of 18 U.S.C. § 1343. Counts 125 through 133 charge Agriprocessors with Mail Fraud, in violation of 18 U.S.C. § 1341. Counts 134 through 143 charge Agriprocessors with Money Laundering and Aiding and Abetting Money Laundering, in violation of 18 U.S.C. §§ 1956(a)(1)(A)(i) and 1956(a)(1)(B)(i) and 2. Counts 144 through 163 charge Agriprocessors with Willful Violations of an Order of the Secretary of Agriculture and Aiding and Abetting Willful Violations of an Order of the Secretary of Agriculture, in violation of 7 U.S.C. § 195 and 18 U.S.C. § 2. The Seventh Superseding Indictment also contains a forfeiture allegation.

### *B. Motion*

On June 15, 2009, Agriprocessors filed the Motion. On June 24, 2009, Agriprocessors filed a Supplement (docket no. 518). On July 2, 2009, the government filed a Resistance (docket no. 525). Agriprocessors did not file a reply.

On July 6, 2009, the court held a hearing ("Hearing") on the Motion. Attorney James A. Clarity, III, represented Agriprocessors. Assistant United States Attorneys Peter E. Deegan, Jr., and C.J. Williams represented the government.

Agriprocessors failed to bring its witnesses to the Hearing and thereby waived any right it may have had to present testimony in support of the Motion. In any event, the court finds an evidentiary hearing is unnecessary because the relevant facts are undisputed. *See, e.g., United States v. Hernandez*, 103 F. App'x 917, 918 (8th Cir. 2004) ("Our precedent does not require the district court to hold an evidentiary hearing on a motion to suppress where the facts are not in dispute."). The Motion is fully submitted and ready for decision.

## III. FINDINGS OF FACT

The relevant facts are undisputed. At the Hearing, the government proffered the relevant facts, and Agriprocessors did not dispute them.

### A. Arrest Warrants

On April 16, 2008, the government filed complaints against almost 700 of Agriprocessors' employees. The government alleged each employee committed one or more criminal offenses and, among other things, used an invalid social security number or the social security number of another person. Because the government was not certain of the true identity of all of the employees, however, each proposed complaint and warrant was captioned "*United States of America v. J. Doe {number}, a/k/a {name on Agriprocessors' payroll records}*."

For example, in *United States of America v. J. Doe 331, a/k/a Jeremais Lopez*, No. 08-MJ-85-JSS (docket no. 331), the government alleged that, on or about February 22, 2006, "J.Doe 331, a/k/a Jeremais Lopez," made a False Representation of a Social Security Number with the Intent to Deceive, in violation of 42 U.S.C. § 408(a)(7)(B), and committed Aggravated Identity Theft, in violation of 18 U.S.C. § 1028A.[2] A federal agent testified in an affidavit that he had obtained Agriprocessors' 2007 fourth quarter payroll report from Iowa Workforce Development ("IWD"). The report indicated an individual had been working for Agriprocessors under the name "Jeremais Lopez" and using the Social Security Number "XXX-XX-X904" since February 22, 2006. At the same time, however, the Social Security Administration ("SSA") confirmed to the agent that "XXX-XX-X904" was a valid social security number that it had issued to a person other than "Jeremais Lopez."

---

[2] At the time, governing precedent held that § 1028A did not require proof that the defendant knew that the means of identity belonged to another actual person. *United States v. Mendoza-Gonzalez*, 520 F.3d 912, 917-18 (8th Cir. 2008), *abrogated by Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009).

After reviewing the government's evidence and finding probable cause, United States Magistrate Judge Jon S. Scoles issued arrest warrants for approximately 700 of Agriprocessors' employees.

### B. Criminal Warrant

On May 9, 2008, the government applied for a search warrant pursuant to Federal Rule of Criminal Procedure 41. The government asked for permission to enter and search Agriprocessors' meatpacking plant in Postville, Iowa ("the Plant") for evidence concerning to various immigration-related crimes. In an affidavit, a federal agent testified about the government's investigation of Agriprocessors' hiring practices. The agent had gathered information from a variety of sources, including former employees, a confidential informant, the SSA and IWD. For example, a former supervisor estimated that 80% of Agriprocessors' employees were undocumented aliens. Federal agents also learned that the SSA had repeatedly notified Agriprocessors that hundreds of its employees' social security numbers did not match the names in the SSA's official records. United States Immigration and Customs Enforcement ("ICE") agents concluded that, during the third and fourth quarters of 2007, approximately 730 of Agriprocessors' employees were using invalid or stolen social security numbers.

After reviewing the government's evidence and finding probable cause, Judge Scoles issued the search warrant. The warrant granted federal agents permission to search the entire Plant. The warrant also permitted the agents to seize any of the approximately 700 undocumented aliens against whom the government had filed a criminal complaint.

### C. Administrative Warrant

Also on May 9, 2008, the government applied for and received an administrative warrant from Judge Scoles. Pursuant to the All Writs Act, 28 U.S.C. 1651(a), and under the authority of *Blackie's House of Beef, Inc. v. Castillo*, 659 F.2d 1211 (D.C. Cir. 1981), the government sought permission for ICE agents to enter the Plant to search for

undocumented aliens. The evidence and allegations in the application for this administrative warrant largely mirrored those of the criminal search warrant, and Judge Scoles found "probable cause to believe that, located within [the Plant], there are persons present who are aliens in the United States without legal authority and subject to removal proceedings pursuant to [8 U.S.C. § 1229a]." Gov't Ex. 2 (docket no. 527-3), at 2. In issuing such a "*Blackie's* warrant," Judge Scoles authorized the ICE agents

> to enter the buildings and areas on the premises . . . , and to make such search as is necessary to locate aliens present in the United States without legal authority and who are employed at present within Agriprocessors, Postville, Iowa. [I]if any such persons are found on the premises, [the ICE agents may] exercise their authority pursuant to [8 U.S.C. § 1357] to question them to determine whether they are such aliens and, if there is probable cause to believe they are such aliens, to arrest them.

*Id*.

### D. Entry and Search

On May 12, 2008, ICE agents entered the Plant, searched for undocumented aliens and seized them. Agents executed the criminal search warrant and gathered evidence from Agriprocessors' human resources files. ICE agents then matched photographs in the files with the names in the criminal arrest warrants. When the ICE agents verified the identity of a person for whom there was an outstanding complaint and arrest warrant, they generally executed the warrant.[3] Execution of the criminal arrest warrants began on May 13, 2008.

---

[3] ICE agents administratively arrested approximately 90 undocumented aliens for whom there were no outstanding criminal arrest warrants. The government sought and obtained complaints for most of these persons after May 12, 2008.

## IV. CONCLUSIONS OF LAW

### A. *Agriprocessors' Arguments*

Agriprocessors makes three arguments in the Motion.[4] First, Agriprocessors argues the government's "use of an administrative warrant to enter, search for and arrest persons for the purpose of prosecuting them criminally" was *ultra vires*. Brief in Support of Motion (docket no. 510-2), at 1. Second, Agriprocessors argues that, even if the government's use of the administrative warrant were proper, "the agents exceeded its scope by detaining and questioning Hispanic workers without a reasonable, articulable suspicion that any particular worker was an illegal alien." *Id*. at 1-2. Third, Agriprocessors argues "the criminal search and arrest warrants . . . were invalid because they did not identify the person to be arrested with requisite specificity and were not supported by probable cause." *Id*. at 2. Agriprocessors concludes that "all of the evidence flowing from the arrests on May 12, 2008 should be excluded at trial under the 'fruit of the poisonous tree' doctrine." *Id*. The government resists the Motion in all respects.

### B. *Analysis*

Before addressing Agriprocessors' three arguments, the court makes two assumptions in its favor. Each assumption is dubious.

#### 1. *Two assumptions in Agriprocessors' favor*

First, the court assumes that Agriprocessors enjoys the same right against unreasonable searches and seizures under the Fourth Amendment to the United States

---

[4] Agriprocessors boldly declares that "[t]he individuals arrested [on May 12, 2008] were not able to challenge the [g]overnment's illegal enforcement techniques because they do not have the legal or financial resources to pursue such a challenge, but [Agriprocessors] has and will mount such challenges." *Id*. at 1. The court notes that Agriprocessors remains in Chapter 11 bankruptcy proceedings. The court also notes each individual arrested on May 12, 2008 had an attorney appointed to represent him or her.

Constitution as an individual person would enjoy. This first assumption in Agriprocessors' favor conflicts with a natural reading of the text of the Fourth Amendment and is contrary to the precedent of the United States Supreme Court. It conflicts with a natural reading of the text of the Fourth Amendment, because the Fourth Amendment states:

> The right of *the people* to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV (emphasis added). Agriprocessors does not explain why the court should count Agriprocessors among "*the people*"; in other words, Agriprocessors does not offer the court a good reason to construe the Fourth Amendment to afford Agriprocessors full-blown Fourth Amendment rights. It is contrary to the precedent of the United States Supreme Court, which has made clear over the past 100 years that corporations do *not* enjoy the same right against unreasonable searches and seizures under the Fourth Amendment as natural persons enjoy. *See, e.g., G.M. Leasing Corp. v. United States*, 429 U.S. 338, 629 (1977) (emphasizing that, while corporations certainly have "some Fourth Amendment rights," "[t]he Court . . . has recognized that a business, by its special nature and voluntary existence, may open itself to intrusions that would not be permissible in a purely private context."); *United States v. Morton Salt Co.*, 338 U.S. 632, 652 (1950) ("[C]orporations can claim no equality with individuals in the enjoyment of a right to privacy."). A court might fairly read the Supreme Court's relevant precedent as endowing corporate entities with only a right to attack general warrants, which the Framers abhorred, or with a basic due process right against clearly abusive government searches and seizures. *See First Nat'l Bank of Boston v. Belotti*, 435 U.S. 765, 778 n.14; *see, e.g., Silverthorne Lumber Co. v. United States*, 251 U.S. 385, 391-92 (1920); *Hale v. Henkel*, 201 U.S. 43, 75-76 (1906).

7

Second, the court assumes that the "fruit of the poisonous tree" doctrine would apply were the court to hold that Agriprocessors' Fourth Amendment arguments were sound. The court makes this second assumption in Agriprocessors' favor despite the fact that Agriprocessors cites no cases wherein the Supreme Court has explicitly sanctioned the extension of the "fruit of the poisonous tree" doctrine to corporations. It seems highly unlikely that the Supreme Court would do so today were the Supreme Court writing on a blank slate; the exclusionary rule appears to be waning not waxing. *See, e.g., Herring v. United States*, 129 S. Ct. 695, 698-704 (2009) (emphasizing that the exclusionary rule does not necessarily follow every violation of the Fourth Amendment and holding that a police recordkeeping error did require the suppression of evidence); *Hudson v. Michigan*, 547 U.S. 586, 588-602 (2006) (holding that a violation of the knock-and-announce rule did not require the suppression of evidence).

### 2. *Holding*

Even with the two foregoing assumptions in Agriprocessors' favor, the Motion is not well-taken and must be denied. All three of its arguments readily fail.

First, Agriprocessors complains loudly that the government acted *ultra vires* and improperly "bootstrapped" the administrative warrant in furtherance of a criminal investigation. There can be no bootstrapping here, however, because the government *obtained a criminal warrant at the same time it obtained the administrative warrant*. This is not a case in which the government attempted to avoid the stricter requirements of a criminal search warrant by seeking only an administrative warrant or used an administrative warrant to obtain facts to support an affidavit for a criminal warrant. *Cf. Blackie's*, 659 F.2d at 1218 (wrestling with the question of whether the government improperly used an administrative warrant as a general criminal warrant).

Second, Agriprocessors lacks standing to challenge any improprieties in the detention of its employees in May of 2008. Even if the court assumes all of the lurid

factual allegations in the Motion (racial profiling, detention in a basement, *etc.*) are true, Agriprocessors may not press the argument on behalf of its employees. As the Supreme Court observed:

> Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. . . . And since the exclusionary rule is an attempt to effectuate the guarantees of the Fourth Amendment, it is proper to permit only defendants whose Fourth Amendment rights have been violated to benefit from the rule's protections. There is no reason to think that a party whose rights have been infringed will not, if evidence is used against him, have ample motivation to move to suppress it. Even if such a person is not a defendant in the action, he may be able to recover damages for the violation of his Fourth Amendment rights, or seek redress under state law for invasion of privacy or trespass.

*Rakas v. Illinois*, 439 U.S. 128, 133-34 (1978) (citations and footnote omitted); *United States v. Lucas*, 499 F.3d 769, 779 (8th Cir. 2007) (en banc) ("Since Lucas does not have standing to assert Scaife's Fourth Amendment rights, any issue of hers is not before us.").

Third, Agriprocessors argues the criminal warrants were not sufficiently specific. Agriprocessors' chief complaint is that the government did not know, in advance, the real names of all of the undocumented aliens at the Plant. There are multiple problems with this argument. Again, Agriprocessors lacks standing to argue on its employees' behalf that the government lacked enough information to arrest each one of them. *Rakas*, 439 U.S. at 133-34. In any event, the court believes the warrants were sufficiently particular under the totality of the circumstances. It must be remembered that "the requirement that a search warrant describe its objects with particularity is a standard of 'practical accuracy' rather than a hypertechnical one." *United States v. Peters*, 92 F.3d 768, 769-70 (8th Cir. 1996). Agriprocessors ignores the teaching of *Blackie's*, which recognized that "[i]t is difficult to imagine any instance in which [ICE] agents could . . . obtain the names of each illegal alien" in advance of any search of an employer's premises. 659 F.2d at 1225. John

Doe warrants are not unknown in the law, *see, e.g., Carroll v. United States*, 354 U.S. 394, 396 (1957), and each John Doe warrant in this case was sufficiently particularized insofar as they not only identified the occupation of the defendants but also contained the names they used at work—names that, at the very least, were the defendants' aliases. *See, e.g., Powe v. City of Chi.*, 664 F.2d 639, 647 (7th Cir. 1981) (reiterating that a John Doe warrant need not include a physical description of the defendant but only provide the best possible description under the circumstances); *Bozeman v. City of Buffalo*, 310 N.Y.S.2d 814, 817 (Sup. Ct. 1969) ("This ancient common-law right protecting the subject from general warrants did not . . . prevent the issuance of a warrant against a party whose name was unknown. [A] valid warrant could be issued provided it set forth the best description possible of the person who was to be arrested . . . by setting forth his appearance, occupation, residence and any other circumstances through which he could be identified."), *aff'd*, 313 N.Y.S.2d 361, 361 (App. Div. 1970). At the very least, the federal agents in this case acted in good faith. *United States v. Leon*, 468 U.S. 897, 913 (1984).

## V. CONCLUSION

The Motion (docket no. 510) is **DENIED**.

**IT IS SO ORDERED.**

**DATED** this 28th day of July, 2009.

LINDA R. READE
CHIEF JUDGE, U.S. DISTRICT COURT
NORTHERN DISTRICT OF IOWA